**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-cr-00572** |
| **GERALD EVANS,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. The defendant, Gerald Evans, has pleaded guilty to a one-count Indictment, charging him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of Title 18, United States Code, Section 922(g)(1).

For the reasons herein, and based on the 18 U.S.C. Section 3553(a) factors, the United States requests that the Court sentence the defendant to a period of **21** months' incarceration for Count One. The government further requests that the Court impose a period of **3** years of supervised release.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2024, Evans boarded a public bus with a loaded, chambered firearm and three 12-guage shells in a satchel strapped across his chest. The safety was switched off.  Evans took a seat in a row across from another gentleman and one row in front of a young woman. A third individual was reclining in the row of seats adjacent to him. The image below notes these individuals with yellow stars. Evans is circled in red.



*See also*, Ex. 1 (10:29:22 – 10:29:40).

A Metro Transit Police Officer saw Evans walk past the fare card reader without paying. The officer identified himself and asked Evans to step off the bus. After disembarking, Evans gave officers a fake name—Big Woobie G—and refused to provide any form of identification. Instead, Evans showed officers an image on his phone containing the moniker "Big Woobie G", which he claimed was his "therapist credentials." Ex. 2 (10.30.43 – 10.32.42). At that point, Evans was detained for fare evasion.

Officers asked Evans what was slung around his body, and he responded, "that's my gun." Ex. 3 (10.41.49 – 10.43.34). Located inside his satchel, officers recovered a black Mossberg 590 Shockwave shotgun-style firearm with one 12-gauge round in the chamber and three rounds in the magazine. Below is an image of Evans with his shotgun.



Officers ran the serial number of the firearm, which indicated it was stolen out of Prince George's County. Further, a routine warrant check revealed Evans had an open warrant in Anne Arundel County for failing to appear for trial in a case alleging theft greater than $1,500 and under $25,000. *See* ECF No. 32, Final Presentence Investigation Report, (PSR) ¶ 51. In that matter, Evans allegedly stole a $7,419 golf cart by purchasing it with a stolen credit card. *Id.*

## II.    THE DEFENDANT'S GUIDELINES CALCULATION

Notwithstanding the Estimated Guidelines calculation in the plea agreement (ECF No. 24), the government concurs with the PSR, which calculated that the Adjusted Offense Level in this matter is 13 and that Evans falls within Criminal History Category II under the United States Sentencing Guidelines (USSG).  PSR ¶¶ 15-26, 31, and 96.

On December 15, 2025, the parties entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), which calculated Evan's total offense level at 19, criminal history category at IV, and Estimated Guidelines Range at 46 to 57 months. ECF No. 24, pp. 2-4. The parties agreed that:

> In the event that the Court or the presentence report writer considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing

> factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court or the presentence report writer and to allocute for a sentence within the Guidelines range, *as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein*.

ECF No. 24, p. 5 (emphasis added). The parties further agreed that "a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)…." *Id*. at 4.

There are two discrepancies between the parties' Estimated Guidelines calculations and that of the PSR. First, the government mistakenly double counted one of the defendant's convictions. The plea agreement originally counted a 2015 Fourth Degree Sex Offense filed against Evans in Maryland as a three-point felony. ECF No. 24, p. 3. However, this charge ultimately merged with Evans's Second-Degree Assault conviction and is the same case. PSR ¶ 98. Accordingly, the government agrees, based on the documentation available to the PSR writer about Evans's prior convictions, that Evans's criminal history score is 3, which places him in a Criminal History Category II. *Id*. ¶ 31.

Second, the government erroneously believed Evans' Second Degree Assault conviction constituted a crime of violence for purposes of calculating the base offense level in Section 2K2.1. ECF No. 24, p.2. The government agrees with the PSR that it is not a crime of violence. PSR ¶¶ 16, 98. Rather, the government agrees that the base offense level in this case is 14 pursuant to USSG § 2K2.1(a)(6)(A), and that Evans should receive two additional points for possessing a stolen firearm pursuant to USSG § 2K2.1(b)(4)(A). PSR ¶ 16-17. Given Evans's acceptance of responsibility, there should be a three-level reduction, bringing the total adjusted offense level to 13. *Id*. ¶ 23-26.

Thus, the Adjusted Offense Level in this matter is 13 and Evans falls within Criminal History Category II, which corresponds to a sentencing range of 15-21 months of incarceration. Pursuant to the terms of the plea agreement, the government recommends a sentence of **21** months, which falls within this guidelines range.

III.    **DISCUSSION AND SENTENCING RECOMMENDATION**

When determining the appropriate sentence, the district court should consider all the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007).  These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

The government recommends that the Court sentence Evans to a term of **21** months' incarceration followed by **3** years of supervised release per the terms of the parties' plea agreement.

A.    **Nature And Circumstances of the Offense and History and Characteristics of the Defendant**

The nature of the instant offense is undoubtedly serious. Evans brought a loaded, chambered firearm onto a public bus with knowledge that the safety was off. Three unsuspecting people sat near him, easily within firing range. Evans cannot have a gun. He is a felon with extensive law enforcement encounters. Indeed, Evans has a history of violent criminal behavior, much of which resulted in relatively short, if any, prison sentences, followed by consistent violations of his supervision. For example, in October 2013, he was arrested for armed carjacking and charged in D.C. Superior Court case 2013 CF3 017468. In that case, Evans entered the front passenger seat of his victim's car and said he had a firearm.[1] PSR ¶ 28. He told his victim, "I've been robbed, that's why I brought this gun. In fact, why don't you get out!" The victim complied, and Evans drove off in the victim's car. *Id*. On November 15, 2013,  Evans pled guilty to Attempt to Commit Robbery and on February 7, 2014, was sentenced to eight months in prison under the

---

[1]  Evans insists the instrument was a BB gun. PSR ¶ 28.

5

Youth Rehabilitation Act, with eight months suspended and 18 months of supervised probation. *Id*. Within months, Evans was violating his conditions of supervision.[2]

Indeed, Evans was under supervision for this 2013 criminal conduct when he met his next victim, a 15-year-old girl, in November 2014. PSR ¶¶ 28-29. Evans—then 20 years old— knew A.W. was just 15. PSR ¶ 29. *Id*. Over the next four months, Evans engaged in sexual contact with A.W. six times. *Id*. After his arrest, Evans confessed to his sexual relationship with a minor. *Id*. He pled guilty to Assault Second Degree in Prince George's County and was sentenced to ten years of incarceration with all but a single day suspended. *Id*. He also received three years of supervised probation, through which he was instructed to enter and complete sex offender treatment. *Id*.  On three different occasions, in 2018, 2019, and 2021, Evans was found to have violated his supervision for, *inter alia*, failing to report to probation, failing to complete a mental health evaluation, and refusing to enter sex offender treatment. *Id*.  In each instance, he was given time served and restored to probation until 2022 when his non-compliance resulted in a sentence of 18 months of incarceration and his probation being terminated unsatisfactorily. *Id*.

Evans has consistently and repeatedly demonstrated a clear disregard for the law and the safety of the community. Moreover, he has shown that he is incapable, or unwilling, to abide by conditions of supervision.  His conduct warrants a sentence at the top of his guidelines range.

B.  **The Need for the Sentence to be Imposed**

Under the totality of the circumstances, the government believes that Evans should be sentenced to 21-months imprisonment. The government credits the defendant's acceptance of responsibility in this case, and acknowledges the defendant's health history detailed in the PSR, as well as during the pendency of this case.  PSR ¶¶ 71-77. Notwithstanding this history, the government submits that a sentence at the top of the guideline range appropriately reflects the seriousness and dangerousness of Evans's conduct.

Evans brought a firearm on a public bus knowing it was loaded, chambered, and ready to fire. In the past, he instilled fear and compelled compliance by representing himself as armed. Evans once robbed

---

[2]  After several extensions, the defendant's probation was "successfully completed" on October 11, 2017. PSR ¶ 28.

a man by leading him to believe he was held at gunpoint. PSR ¶ 28. Evans told the man that he carried the gun because he had been robbed before. PSR ¶ 28. If true, Evans's own victimization at gunpoint did not deter him from inflicting the same kind of fear on his victim as he produced what he claimed was a firearm and demanded the victim's car. *Id*.

Evans gave a similar justification for his conduct in this case. He told the PSR writer that he "had the firearm due to 'fear.'" PSR ¶ 14. Similarly, he told the officers who located his firearm, "this sh*t ain't a game out here." Ex. 3. Evans's concern appears to begin and end with his personal wellbeing. The PSR is replete with instances of Evans instilling fear in others.

Evans has a history of receiving leniency. For his carjacking he received an amended charge of Attempted Robbery and suspended jail time. *Id*. ¶ 28. After repeated sexual intimacy with a minor, Evans received a sentence with all but one day suspended. *Id*. ¶ 29. His repeated failures to comply with sex offender treatment were almost always met with time served. *Id*.  Each time Evans was released he engaged in more criminal conduct. Now, it is left to this Court to impose a period of incarceration at the top of the guidelines range, signaling there are consequences for repeatedly flouting the law at the risk and expense of others.

### C.        Statutory Penalties and the Sentencing Guidelines

As noted above, the government concurs with the assessment of the United States Probation Office regarding the total offense level applicable in this case, Evans's criminal history score, and the resulting guidelines range. Pursuant to its plea agreement, the government is seeking a Guidelines-compliant sentence of **21** months' incarceration.  This sentence reflects the principles set forth in the Guidelines and appropriately balances the § 3553(a) factors and the interests of justice.

## IV.    CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Evans to **21** months' incarceration to be followed by a term of three years' supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Colleen Bloss*
Colleen Bloss
TX Bar No. 24082160
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7063
colleen.bloss@usdoj.gov

8